Joseph A. Kellogg, Robert B. Lansing and Edward H. Angell, as Executors and Trustees under the Last Will and Testament and the Codicil Thereto of J. Huyler White, Deceased, and as Executors and Trustees under the Mutual Will and Codicil Executed by Susan White, Plaintiffs, *v.* Susan White, Individually and as Executrix and Trustee under the Last Will and Testament and the Codicil Thereto of J. Huyler White, Deceased. Anna White et al., Defendants.

(Supreme Court, Warren Special Term, April, 1918.)

Wills — intention of testator — executors and administrators — trusts — husband and wife — actions.

The executors of a will must take it as written, and where its words are clear and unambiguous the executors may not go outside of the will to determine the intention of their testator.

Where testator by his will in clear and positive terms gave all his estate to his wife and only in the event of her not surviving him did the will provide for a further disposition of the estate, but she did survive him, trust provisions in the will for the benefit of others are nugatory and the executors are in duty bound to see that the estate of their testator passes, as intact as may be, to his widow, and an action which seeks to make a·different disposition of testator's estate from that provided by the will is not maintainable by the executors.

Action for the construction of a will.

Joseph A. Kellogg, for plaintiffs.

William M. Cameron (Edgar T. Brackett, of counsel), for defendant Susan White.

Henry W. Williams, guardian *ad litem* for defendants Higley.

Beecher Clother, guardian *ad litem* for defendants White, infants.

BORST, J. J. Huyler White and the defendant Susan White, his wife, made their separate wills at the same time. Later, one of the executors named in each of these wills having died, another was named in his place by codicils, each executed at the same time. The wills were made in February, 1915, and the codicils in May, 1916, and Mr. White died in July of the latter year. His will has been probated and the plaintiffs and the defendant Susan White have qualified as executors thereof. The plaintiffs in their capacity as executors and trustees named in these wills allege in the complaint that these wills and codicils were made pursuant to a mutual verbal agreement between the parties by which each agreed to make and leave a last will and testament giving all his property to the survivor who should have nominally the entire estate but that the same should be held in trust only for the purpose denominated in their mutual wills and codicils which was the support of the survivor and of the defendant Anna White and the support and education of the other defendants, infant grandchildren of the testators, and that said agreement should be irrevocable except by mutual consent. A decree is asked that it be determined that the wills were mutual and irrevocable; that the defendant Susan White be restrained from revoking or changing her will and from disposing of any part of the *corpus* of the estate she received through her husband's will; that a receiver be appointed to take charge of the property, with authority to use so much as with the income will be necessary for her support and to devote an equi-

table amount thereof to the support of the defendant Anna White and the support and the education of the other defendants, grandchildren of the testators.

The will of J. Huyler White after directing the payment of his debts continues, " *Second*. I give, devise and bequeath unto my beloved wife, Susan White, all my property, both real and personal and wheresoever situate, to have and to hold the same absolutely and forever. *Third*. In the event that my said wife shall not survive me, *then and in that case only,* I dispose of my property, as follows, to wit: " Then follow several bequests of small articles of personal property to certain of his grandchildren and to his daughter-in-law, the defendant Anna White, and the testator gives to the latter during her lifetime or until she remarries the house, with the contents, in which she was living and upon her decease to her children, his grandchildren. The remainder of his property he gives to his executors in trust to invest and to divide the income therefrom between his daughter-in-law, Anna White, and his grandchildren until his youngest grandchild shall reach the age of twenty-one years when the property is to be divided between his daughter-in-law, if living and unmarried, and his several grandchildren.

The will of Susan White was exactly similar to that of her husband except it contained cross provisions for his benefit similar to those expressed in his will for her. Since his death she has made other wills.

The right of plaintiffs to maintain this action is well challenged by the defendant Susan White. An " executor " is a person appointed to carry the will into effect after the testator's death and to dispose of his estate according to its tenor. The executors of a will are to take it as written. They may not go outside of the will to determine the intention of the testa-

tor as expressed in its terms where the language of the will is clear and unambiguous. They may, therefore, not maintain contrary to the plain provisions of the will that it was the intention of the testator to do otherwise with his property than as he states in his will. Schouler Wills (5th ed.), §§ 465, 568, 569; 40 Cyc. 1389; *Zimmerman* v. *Hafer,* 81 Md. 347; 32 Atl. Rep. 316; *Matter of Andrews,* 43 App. Div. 394, 401; affd., 162 N. Y. 1; *Locke* v. *Rings,* 66 Hun, 428; *Matter of Martindale,* 69 Misc. Rep. 522. If there is doubt about the construction of a will as it is written, the executors may by themselves or through the court take into consideration matters which will explain the meaning of the language used in the will, but they may not resort to evidence to prove intention as an independent fact. Schouler Wills, §§ 568–587.

The will of J. Huyler White is clear and positive in its terms. It gives all his estate, after providing for the payment of his debts, to his wife. In case she does not survive him " and in that case only " he makes further disposition of his property. The plaintiffs as executors of that will are charged by the testator, his wife having survived him, with administering the estate by paying the debts of the testator and turning over the remainder of the property less the expenses of administration to his wife, the defendant Susan White. Because of this situation, Susan White having survived her husband, the trust provisions in his will for the benefit of the defendant Anna White and the testator's grandchildren are nugatory if the will alone is considered. The plaintiffs came into the possession of the property of the testator by virtue of the provisions of his will. In hostility to what he declared in his will, they now seek to make a different disposition of the property from that provided by him therein. If the testator made a contract with the defendant

Susan White, the parties interested in such contract may undertake its enforcement but not the plaintiffs who may not dispute or challenge the instrument under which they get the right to act and which is the source of all their power to act. The executors of J. Huyler White are interested only in the disposition of the property named in his will and to see that it passes as intact as may be to his wife, the defendant Susan White. When they have accomplished this, their functions for which they are nominated in the will cease. The plaintiffs contend that they are trustees under a trust impressed upon the property of J. Huyler White. They must rest this claim on the contract and not upon the will, and it therefore cannot be enforced by them by virtue of the will. If executors may institute assaults upon the integrity of the will, then who is to defend it and contend for the wishes of the testator as expressed in it? The functions of the executors are those of trustees. The contract from which they derive their authority and which they are to enforce is contained in the instrument alone whereby they are nominated. No authority is conferred upon them by the instrument through which they get their appointment to maintain that a separate contract made outside of it is to be read into and made a part of it. If it be conceded that executors may enforce alleged contracts not a part of a will, then the assaults made upon estates which have been decried recently by the courts may easily be furthered. The plaintiffs therefore may not as executors of the will of J. Huyler White maintain this action, neither can they as executors of the will of Susan White invoke the powers of the court to compel her to perform a contract which they allege she made entirely separate and distinct from the provisions of the wills in question. It is the theory of and the practice under the laws of this state

that it is a person damnified who alone may maintain an action for his protection or redress. Here the theory of the complaint is that the defendant Susan White has violated an agreement made with her husband, J. Huyler White, for the benefit of the defendant Anna White and the grandchildren. If the oral agreement alleged was made and has been violated, the parties who suffered by the violation are Anna White and the grandchildren and not the plaintiffs.

The will of Susan White has not been proven. Until her death, the executors, the plaintiffs here, named in that will acquire no rights nor powers under it. As said in *Edson* v. *Parsons,* 155 N. Y. 555, a will " is a disposition of property, which neither can nor is supposed to take effect until after death." A party by the mere making of a will, whatever contracts he might have made outside, does not give his executors by virtue of such will, before his will takes effect on his death, any rights under it. Until the will is probated, they are only executors in embryo. In any event they have no power to come into this court and ask that a will be probated during the maker's life to protect the provisions of an oral contract which are in hostility to the terms of such will.

But if the conclusion contended for be erroneous and the plaintiffs may maintain the action, yet they must fail because the contract has not been proven within the authorities which govern in such cases. The rule is well established that such contracts must be certain and definite and established by the plainest, most convincing and indisputable evidence. *Wallace* v. *Wallace,* 216 N. Y. 28; *Edson* v. *Parsons, supra; Hamlin* v. *Stevens,* 177 N. Y. 39; *Taylor* v. *Higgs,* 202 id. 65; Alexander Wills, §§ 85, 92.

No attempt has been made to prove the alleged contract by direct evidence. It is sought to establish it

by admissions of the testator.   To discuss these in
detail would carry this opinion beyond reasonable
limits.   The more important of these alleged admis-
sions are testified to by parties interested.   This kind
of evidence has been frequently characterized by the
courts as of the weakest and most unsatisfactory kind,
and as unreliable evidence to support a contract such
as is here sought to be established.   If the disposition
of similar cases based upon similar evidence is to
control, the finding in this case must be that the con-
tract alleged has not been established.   *Tousey* v.
*Hastings*, 194 N. Y. 79; *Townsend* v. *Perry*, 177 App.
Div. 415; *Wallace* v. *Wallace*, 158 id. 273, 281; affd.,
216 N. Y. 28.

Further, there are many facts presented by the evi-
dence which go very far towards disproving the mak-
ing of the alleged contract   The terms of the will are
very significant.   The fact that there was an absolute
devise from each testator to the other without limita-
tion is strong evidence that there was no intention to
limit the use and control of the property granted.
When an intention is reduced to writing, either in the
form of a will or a contract, there is always a strong
implication of fact that the whole intention has been
expressed and an implication still stronger that there
is no agreement or intention contrary to that
expressed.   These wills were prepared by a lawyer
of large experience and after much consideration.   If
an agreement such as is alleged was made or referred
to by these parties at the time the wills were presented
by him for signature and his opinion was asked, as he
testified, in reference to the validity of such an agree-
ment, why was it not inserted in the wills by him or a
writing made expressing its terms?   The fact that this
was not done is evidence that, if there was any con-
versation between the parties at that time that the

wills should be irrevocable, it was casual and not such as led the attorney to the conclusion that a contract was made or existed, for had this been so he undoubtedly would have advised these old people that it should be put into their wills or in the form of a written agreement.

Previous wills had been made by the parties each of which contained similar absolute provisions for the other in case of survivorship with provisions for the disposition of the property in the event of nonsurvival. Yet as to none of these wills has there been a suggestion that they were to be non-revocable or that they were otherwise than as stated in the language used in them.

The defendant Susan White was past seventy years of age at the time of the trial. As a witness she appeared intelligent and as a woman of strong mind. She exhibited some evidences of forgetfulness under pressure of examination but she left the abiding impression that her mind was clear and that she knew whereof she was speaking. In most positive terms she denied that there was an agreement that the wills were to be irrevocable. She explained with clearness many incidents about which testimony had been given on behalf of plaintiffs to establish the contract and to show that her mind was not clear and that she was incompetent to manage her affairs. Her competency is supported by the uncontradicted evidence of two physicians.

When we consider all the evidence in this case relating to the lives of these two old people, their children and their grandchildren, the conclusion is unavoidable that the wills in question are most natural. These people had lived a long and happy married life. They undoubtedly had the utmost confidence in each other. Their children had passed away. Their grandchildren

Surrogate's Court, New York County, April, 1918. [Vol. 103.

were young and one of them at least was quite head-strong. It was but a natural desire on their part that the accumulations of their joint labors should pass to the survivor to have that one determine what should be done with it at a later date than the making of the wills. The provisions in the wills for the daughter-in-law and the grandchildren in case of the death of the survivor without making another will were also natural. These provisions met the wishes of the testators at the time of the making of the wills but were subject to change by the survivor if desired or to meet contingencies that might arise.

On the merits, as well as upon the right of the plaintiffs to maintain the action, the findings should be in favor of the defendant Susan White.

Ordered accordingly.