■    In the Matter of the Estate of CLINTON G. BAINER, Deceased. ELIZABETH A. McLAUGHLIN, as Executrix of CLINTON G. BAINER, Deceased, Appellant; LOTTIE B. BAINER, Respondent.—Appeal from an order of the Surrogate's Court, entered December 13, 1978 in Columbia County, which dismissed the application of petitioner in a proceeding to compel delivery of assets belonging to the estate of Clinton G. Bainer and now possessed by the respondent Lottie B. Bainer. On July 28, 1965 Clinton and Bessie Bainer, as husband and wife, executed a joint will which provided, in part: "We, CLINTON G. BAINER and BESSIE E. BAINER * * * do hereby jointly and severally make, publish and declare the following to be our last WILL AND TESTAMENT * * *. SECOND: We give, devise and bequeath all of our property, both real and personal * * * unto the survivor of us, *and to the heirs or assigns of such survivor* [emphasis added]. THIRD: That in the event of the death of both of us, we give, devise and bequeath all of our property * * * unto our children * * * equally share and share alike." Bessie Bainer died in 1966 and Clinton Bainer remarried. In 1978 Clinton Bainer died without making a new will. Petitioner, as executor under the joint will, sought an order declaring the joint will a binding contractual obligation that would allow the children of Bessie and Clinton Bainer to recover any assets Clinton may have given his second wife, Lottie, in violation of this alleged contract. The Surrogate ruled that the language "and to the heirs and assigns of such survivor" employed in paragraph second means the same as the words "absolute owner" and "absolutely" as used in *Matter of Zeh* (24 AD2d 983, affd 18 NY2d 900) and refutes the existence of a binding contractual obligation. Two persons may validly agree to dispose of their estates in a particular manner and such an agreement may find expression in a joint or mutual will *(Glass v Battista,* 43 NY2d 620, 623-624; *Schwartz v Horn,* 31 NY2d 275, 279; *Wagner v Wagner,* 58 AD2d 7, 10, affd 44 NY2d 780). However, the mere existence of a joint testament may not in and of itself serve to establish such an agreement *(Rich v Mottek,* 11 NY2d 90, 94; *Tutunjian v Vetzigian,* 299 NY 315, 320). Joint wills are not contractually binding where such intent is left to conjecture *(Glass v Battista, supra,* p 624) and judicial policy has been one of great reluctance to restrict the ambulatory nature of a will—be it joint or mutual—absent convincing evidence of such clear intent *(Oursler v Armstrong,* 10 NY2d 385, 389; *Matter of Wiggins,* 45 AD2d 604, 610, CARDAMONE, J., dissenting, affd 39 NY2d 791; see, also, *Matter of Zeh, supra).* Although extrinsic factors may be referred to in determining that parties to a joint reciprocal will intend it to be a binding contract (see *Rubenstein v Mueller,* 19 NY2d 228; *Rich v Mottek, supra),* where the language of the joint instruments creates an absolute grant to the survivor, no contract will be found *(Matter of Zeh,*

*supra).* Such is the case here. Despite the use of "we" instead of "I" throughout the joint will, paragraph "SECOND" clearly assigns to the "survivor of us, and to the heirs and assigns of such survivor" the property of the other. Standing alone, this language does not defeat the creation of a contractual obligation for the survivor not to change testamentary dispositions *(Tutunjian v Vetzigian, supra).* However, here, unlike in *Tutunjian v Vetzigian (supra),* paragraph "THIRD" states that the children of the marriage take "in the event of the death of both of us." This paragraph seems more a provision for mutual disaster only, rather than a general expression of intent to make the joint will contractually binding. In *Tutunjian (supra)* a subsequent paragraph of the joint will provided that "In the event that HELEN TUTUNJIAN predecease MIHRAN TUTUNJIAN, or MIHRAN TUTUNJIAN predecease HELEN TUTUNJIAN, or we should die under such circumstances as to make it uncertain which of us died first, then we, or the survivor of us, do bequeath and devise all our property" (p 318). This latter provision, unlike here, leaves no doubt that the terms of the will impose a clear contractual obligation on the part of husband and wife to provide at death, first for each other, and then for their family. (See, also, *Rich v Mottek, supra; Wagner v Wagner, supra.)* Therefore, the decision of the Surrogate should be affirmed. We need not pass upon the rights of the four surviving children of Clinton Bainer or those of his second wife concerning the intestacy status of Mr. Bainer's estate. Further proceedings may be necessary to implement the distributive provisions of EPTL 4-1.1. Order affirmed, without costs. Mahoney, P. J., Sweeney, Kane, Staley, Jr., and Herlihy, JJ., concur.